IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 24, 2011

## STATE OF TENNESSEE v. JEREMY CURTIS WELLS

**Appeal from the Circuit Court for Blount County**
**No. C-19053    David R. Duggan, Judge**

_____

**No. E2010-02210-CCA-R3-CD - Filed July 12, 2011**

_____

The Defendant pled guilty to promoting the manufacturing of methamphetamine, a Class D felony, with the length and manner of service for the sentence left to the discretion of the trial court. The trial court sentenced the Defendant as a Range I, standard offender to a four-year sentence of split confinement, with nine months to be served in the Blount County Jail and the remainder of the sentence on enhanced supervised probation. In this appeal as of right, the Defendant contends that the trial court erred in imposing the maximum sentence and in determining the manner of service for his sentence. Following our review, we affirm the judgment of the trial court. However, we remand the Defendant's case with direction to the trial court to correct the judgment to reflect that the Defendant is serving his nine-month period of confinement in the Blount County Jail, not the Tennessee Department of Correction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Raymond Mack Garner, District Public Defender (at trial), for the appellant, Jeremy Curtis Wells.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant, who was 28-years-old, admitted at the sentencing hearing that on July 21, 2010, his cousin asked him if he would go to Target and purchase Sudafed. The Defendant said that his cousin intended to sell the Sudafed to someone for use in the manufacturing of methamphetamine and give him the profits from the sale. Understanding that any Sudafed he bought at Target and gave to his cousin would be used to manufacture methamphetamine, the Defendant went with his cousin to Target and purchased Sudafed. He said that when he and his cousin returned to the car with the Sudafed, they were stopped by agents of the Drug Task Force.

The Defendant stated that he had been living with his grandparents and working at Sonic when he committed the instant offense. He explained that he took care of his grandparents and would drive them to their doctor's appointments. He admitted that he had been using methamphetamine and that he spent approximately $100 dollars a week to purchase the methamphetamine that he used. He said that his grandparents did not know that he had been using methamphetamine or selling Sudafed for profit. He said that he began drinking and using marijuana when he was a teenager but that he had only started using methamphetamine a "couple of months" before he was arrested. He admitted that he had continued to smoke marijuana after he started using methamphetamine but that he did not smoke as much marijuana. He said that purchasing Sudafed for profit was the "stupidest mistake" he had "ever made in [his] entire life." He explained that he committed the offense because "[b]ills were tight."

The Defendant admitted that he had bought and sold Sudafed with his cousin on prior occasions. The Defendant also admitted that he had been convicted of several misdemeanors in the past and that he was on probation when he began using methamphetamine and when he committed the instant offense. The Defendant had received a sentence of 11 months and 29 days, suspended to probation for misdemeanor convictions of possession of marijuana, possession of drug paraphernalia, and various driving offenses. The Defendant admitted that he had a pending violation of probation charge because he had failed to report to his probation officer after he was placed on probation on February 19, 2010. The Defendant also admitted that he had received and completed a probationary sentence in 2003 for a theft of property conviction.

The Defendant said that while he had been given alternative sentences before, the time he had spent in jail for this offense had opened his eyes. He explained that he would do anything to stay out of jail. The Defendant stated that if he were given an alternative sentence, he would continue to live with his grandparents and work at Sonic. The Defendant said that he would focus on work and stay away from the people who used methamphetamine

and that he believed that he could stay out of trouble. When asked what would happen if he had the same money problems as before, the Defendant said that he would not make the same mistake again.

Following the presentation of the evidence and arguments by the State and defense counsel, the trial court sentenced the Defendant to four years, the maximum sentence possible in the Defendant's range classification. The trial court ordered the Defendant to serve nine months in the Blount County Jail and to serve the remainder of his four-year sentence on enhanced supervised probation. The trial court further ordered the Defendant to submit to "more frequent" drug screens and to complete an alcohol and drug assessment and a mental health assessment.

In setting the length of the Defendant's sentence, the trial court applied the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]
>
> (13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:
>> (C) Released on probation[.]

Tenn. Code Ann. § 40-35-114(1), (13). In applying the criminal convictions or criminal behavior enhancement factor to the Defendant, the trial court explained that it was specifically considering the Defendant's prior criminal behavior as well as his misdemeanor convictions. The trial court also applied the following mitigating factor:

> (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]

Tenn. Code Ann. § 40-35-113(1).

In determining the manner of service for the Defendant's sentence, the trial court found that the Defendant's potential for rehabilitation was low given his prior criminal history and the fact that he was on probation when he committed the offense. The trial court stated that the "risk is high that during a period of probation [the Defendant] will commit another crime" and that it did not believe that the Defendant would abide by the terms of a probationary sentence. The trial court also found that measures less restrictive than confinement had been "frequently and recently" applied to the Defendant. The trial court stated that the Defendant was "a high risk for probation."

## ANALYSIS

### I. Guilty plea transcript

The record on appeal does not include the guilty plea submission hearing transcript. The absence of the guilty plea hearing transcript is particularly important because

> [f]or those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

State v. Keen, 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) (internal citations omitted). However, we do not believe that the absence of the transcript is fatal to the appeal in this case because the testimony submitted at the sentencing hearing and in the presentence report presented sufficient facts surrounding the offense to which the Defendant pled guilty. Furthermore, the State does not argue that the absence of the guilty plea transcript is fatal to the appeal in this case.

### II. Length of sentence

The Defendant contends that the trial court erred in imposing the maximum possible sentence of four years. The Defendant asserts that a sentence of three years would have been a "more reasonable sentence" given the Defendant's minimal criminal history and the fact that he was "led into his criminal behavior by others." The State responds that the fact that it was the Defendant's cousin's idea to commit the crime was irrelevant. The State further responds that imposing the maximum sentence was reasonable given the Defendant's continued criminal behavior and the fact that he committed a felony while on probation. The State asserts that the trial court would have been justified in imposing a sentence of confinement.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2005). The appealing party has the burden of showing that the imposed sentence is improper. Id. If review of the record reflects that the trial court properly considered all relevant factors, gave due consideration to each factor, and its findings of fact are adequately supported by the record, this court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Should the record fail to demonstrate the required considerations

by the trial court, then appellate review of the sentence is purely de novo. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review, the trial court must "place on the record, either orally or in writing, what enhancement and mitigating factors were considered, if any, as well as the reasons for the sentence." Tenn. Code Ann. § 40-35-210(e).

The Defendant committed this offense on July 21, 2010; therefore, he was sentenced under the 2005 revisions to the Criminal Sentencing Act. The Act provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
>> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>>
>> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2) (2006).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In conducting its de novo review with a presumption of correctness, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

While the Defendant's criminal history consists of misdemeanor convictions, he had persisted in engaging in criminal behavior even after having been given probationary sentences. Indeed, the Defendant was currently on probation when he committed the instant offense. The Defendant admitted that he had bought and sold Sudafed with his cousin on other occasions before he committed the instant offense. Additionally, the trial court considered the purposes and principles of the Sentencing Act and the applicable enhancement and mitigating factors in setting the length of the Defendant's sentence. Accordingly, we conclude that the trial court did not err in setting the length of the Defendant's sentence.

III. Manner of service for the sentence

The Defendant contends that the trial court's ordering him to serve nine months of his sentence was "unreasonable under the circumstances of his actual conduct and behavior." The Defendant asserts that a split confinement sentence with only 90 days to serve in the county jail would have been more consistent with the purposes and principles of the Sentencing Act. The State responds that the trial court's sentencing decision was reasonable and supported by the record.

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a). However, the Defendant must have established his suitability for probation. Tenn. Code Ann. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The Defendant would have been "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary" because he was convicted of a Class D felony. Tenn. Code Ann. § 40-35-102(6). In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C); see also Hooper, 29 S.W.3d at 5. The trial court shall also consider the mitigating and enhancing factors as set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Here, the Defendant committed the instant felony offense while he was on probation for drug-related misdemeanor convictions. The Defendant began using methamphetamine while he was on probation and continued to use marijuana after having been convicted of possession of marijuana and sentenced to probation. The Defendant also had a pending probation violation charge for failing to report to his probation officer. Under these circumstances, we conclude that the trial court did not err in imposing a sentence of split confinement with nine months to serve followed by enhanced supervised probation.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed. However, we remand the Defendant's case with direction to the trial court to correct the judgment to reflect that the Defendant is serving his nine-month period of confinement in the Blount County Jail, not the Tennessee Department of Correction.

_____
D. KELLY THOMAS, JR., JUDGE